728 S.E.2d 147

**STATE of West Virginia ex rel. Charles Wesley THOMPSON, Plaintiff Below, Petitioner**

v.

**David BALLARD, Warden, Mount Olive Correctional Center, Defendant Below, Respondent.**

No. 11–0307.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 2012.

Decided June 13, 2012.

264

Joseph T. Harvey, Esq., Natalie N. Hager, Esq., Princeton, WV, for Petitioner.

Darrell V. McGraw, Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, WV, for Respondent.

PER CURIAM:

The petitioner, Charles Wesley Thompson, appeals from the February 9, 2011, order of the Circuit Court of Mercer County, West Virginia, that denied his post-conviction habeas corpus after two evidentiary hearings. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court did not commit reversible error and accordingly, we affirm the decision below.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner, Charles Wesley Thompson, was indicted during the October 2003 term of the grand jury, on twenty counts of sexual offenses involving his stepdaughter, T.H.[1] The charged crimes include seven counts of sexual assault in the first degree, ten counts of sexual abuse by a custodian and three counts of sexual abuse in the third degree. All of the charged incidents happened between the years 2000 and 2002, but the indictment did not contain specific dates for each offense.

The petitioner's case proceeded to trial and on September 30, 2004, the jury returned a verdict of guilty on all counts, with the exception of Count 13, which was dismissed by the circuit court during the trial. The petitioner was sentenced on December 6, 2004, to serve an indeterminate term of fifteen to thirty-five years for each offense of first degree sexual assault, ten to twenty years on each count of sexual abuse by a custodian and one to five years for each offense of sexual assault in the third degree. The sentences on some of the counts ran concurrently with others; some were to run consecutively. In terms of actual service of time, the petitioner must serve a sentence of twenty-six to sixty years in the penitentiary before he is eligible for parole. He faces a possible maximum sentence of sixty years before he is eligible for release.

At the trial of this matter, the State called upon Gregory Wallace, M.D., for expert testimony regarding his physical examination of the victim in this case. Dr. Wallace testified about performing what he termed a "bi-manual examination" of the child's pelvic region.[2] In addition to discussing physical signs of sexual abuse, Dr. Wallace opined that eighty-five to ninety-five percent of sexually abused children do not show physical signs of trauma or abuse. Counsel for the petitioner did not object to the opinions of Dr. Wallace, although he did cross-examine the witness on a variety of subjects.

A motion for new trial was filed on October 12, 2004. The stated grounds for the motion for new trial was error in permitting Victoria Weisiger, a treating child psychologist, to testify about T.H.'s disclosure of sexual abuse to her. The new trial motion also centered on the testimony of Dr. Wallace. The circuit court denied the motion for new trial on November 3, 2004. This Court de-

---

1. Because of the sensitive matters in this proceeding, the Court adheres to our common practice of using initials instead of the full names of the victim of this crime. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. This examination involves examining the laxity of the vaginal wall. The belief expressed by this witness is that increased laxity of the vaginal wall is indicative of sexual penetration.

nied the petitioner's direct appeal on September 6, 2006.[3]

The petitioner filed his first petition for writ of habeas corpus on May 8, 2009, in which he raised to following grounds: (1) ineffective assistance of counsel; (2) denial of fair trial and due process of law; (3) complaints over the testimony of Dr. Wallace; (4) such other grounds as may be assigned upon the hearing. The petitioner requested that counsel be appointed for him. The circuit court appointed counsel to represent the petitioner.

A second petition writ of habeas corpus was thereafter filed on November 6, 2009. The grounds in this petition were (1) the petitioner was denied his rights to a trial by jury and his right to due process of law by a state legal framework that permits conviction without proof of the act; (2) the expert opinions of Dr. Gregory Wallace do not past muster pursuant to *Daubert v. Merrell Dow Pharmaceuticals*[4]; and (3) counsel for the petitioner was ineffective. Petitioner waived certain other grounds in his *Losh*[5] checklist.

At issue in the habeas proceedings was whether the West Virginia Department of Health and Human Resource ("DHHR") had issued an exculpatory letter regarding its investigation of the allegations against the petitioner. In the course of divorce proceedings involving the petitioner and his wife, the mother of T.H., the DHHR investigated allegations of abuse and neglect of T.H. while in the home of the petitioner. According to the petitioner, the DHHR issued a letter clearing the petitioner of any allegations of abuse or neglect. Despite extensive searches, this supposed letter was not located.[6]

Two omnibus hearings were held in this matter. At the first hearing, held on November 9, 2009, the petitioner testified and called William Akers, his divorce attorney, and Derrick Lefler, his attorney at the time of the trial. Mr. Akers was questioned regarding the existence of the DHHR letter claimed to be exculpatory by the petitioner. Mr. Lefler testified about his representation of the petitioner in the underlying trial. On March 22, 2010, the circuit court held a status hearing regarding whether the letter

**3.** There were five grounds for error in the direct appeal:

(1) The circuit court committed reversible and prejudicial error in allowing six counts of first degree sexual assault to go to the jury when there was no factual basis presented to the jury to support the element of the offense that T.H. was under eleven years of age at the time of the offense and thus incapable of consent;

(2) The circuit court committed reversible and prejudicial error in allowing the testimony of Ms. Weisiger to be viewed by the jury as expert testimony and to allow her to give expert opinions when she was not academically or otherwise qualified to give such testimony;

(3) The circuit court committed reversible and prejudicial error in allowing the expert opinion of Dr. Wallace as it relates to his "bi-manual exam," as it was not disclosed in discovery and by the witness' own admission, has no validation within the medical community at large;

(4) The circuit court committed plain error when the court did not *sua sponte* grant a new trial after a witness testified to hearsay identification of the defendant, which had indirectly been the subject of a pretrial motion *in limine;*

(5) The cumulative effects of the errors committed by the circuit court in denying the petitioner's other motions and objections requires relief.

**4.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**5.** The *Losh* checklist is a listing of potential grounds for habeas corpus relief, pursuant to the West Virginia Post-Conviction Habeas Corpus Act, W. Va.Code §§ 53–4A–1 to –11 (Repl.Vol. 2000), and *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

**6.** The circuit court ordered the petitioner's counsel and the prosecuting attorney's office to scour the DHHR files to find this letter. At one of the hearings on this writ, the petitioner's mother testified that she saw a letter from Cindy Snuffer from the DHHR written in 2002 "to inform him that they had no evidence to prosecute him." The petitioner's mother testified that the charge was child molesting. Furthermore, at this same hearing, petitioner's prior counsel, David G. Smith, testified that the petitioner brought to him a letter from DHHR that "basically said that these things had been investigated and they had not been substantiated." Mr. Smith was relieved as counsel for the petitioner prior to the trial because of a conflict of interest.

Also testifying at the hearing was the petitioner's divorce counsel, William J. Akers. Mr. Akers testified that he received, and gave to petitioner's trial counsel a letter from the DHHR stating that they (the DHHR) had investigated the petitioner's home and could find nothing wrong with the child.

claimed to be exculpatory could be located. The circuit court ordered counsel for the petitioner and for the DHHR to examine their files for the purported letter. In June 2010, a potential conflict in appointed counsel's representation of the petitioner was identified, and the petitioner's request for appointment of new counsel was granted. Another omnibus hearing was scheduled for October 18, 2010, at which time Mr. Lefler, Mr. Akers, Margaret Thomas, David Smith and the petitioner testified. Another request was made to examine the DHHR's records for the existence of the allegedly exculpatory letter. No such letter was found. The hearing was continued. On January 3, 2011, the circuit court held a status hearing, at which time counsel for the petitioner reported that her investigation failed to located a purported exculpatory letter. Petitioner's counsel then requested, and was granted, permission to search the medical records of Princeton Community Hospital and Robert C. Byrd Clinic in Lewisburg for a copy of the letter. By letter dated January 19, 2011, counsel for the petitioner confirmed to the circuit court that the examination of all potential sources' records failed to reveal the existence of the purported exculpatory letter.

At the conclusion of the evidence, on February 9, 2011, the circuit court issued a forty-eight page order that denied the petitioner's request for a writ of habeas corpus. The petitioner timely appealed this ruling.

## II.

## STANDARD OF REVIEW

We are called upon in this case to review the circuit court's denial of the appellant's petition for habeas relief.

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review.

Syl. pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). Further, this Court

specifically has held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975). In regard to the claims of ineffective assistance, we have held:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

With these standards to guide us, we now proceed to our discussion of this case.

## III.

## DISCUSSION

The petitioner raises three issues in his appeal to this Court. The first issue is whether he was denied due process and a fair trial because he was convicted without proof of one of the elements of the crime. The second ground is whether the expert opinions expressed during trial by Dr. Wallace were admissible pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The final issue presented in this appeal is whether the petitioner was denied effective assistance of counsel pursuant in the criminal proceedings. Each issue shall be addressed in turn.

## A.

## Insufficient Proof of the Elements of the Crime

The petitioner argues that the State did not produce sufficient evidence to convict him. The basis for this argument is the victim's use of the word "probably" when trying to detail the time frame of the inci-

dents in question. As such, the petitioner argues that he was denied his right to a trial by jury and his right to due process of law "by a state legal framework that permits conviction without proof of the criminal act, thus rendering the indictment defective."

The evidence available to this Court was that the petitioner was charged with sexually assaulting his stepdaughter in the summer of 2000 when she was ten years of age. The assaults continued until the fall of 2002. The State explained in opening statements to the jury that the charges were based upon two assaults for each season, meaning that there was one count of first degree sexual abuse and one count of sexual abuse by a parent, guardian or custodian for each season. Each count of the indictment began with the phrase "[T]hat during the ___ of _____, the exact date to the Grand Jury Unknown."

During her direct testimony, the State questioned the victim about the timing of these assaults. The victim testified that these acts "probably took place one a month" during these time periods. The State argued that these acts took place twice during the summer, fall and winter of 2000; the winter, spring, summer and fall of 2001; and the spring, summer and fall of 2002, for a total of twenty charges.

■ The circuit court found that the victim's testimony that these sexual acts "probably took place once a month" sufficiently supported the charges in the indictment. The circuit court further cited Syl. pt. 4 of *State v. Chaffin*, 156 W.Va. 264, 192 S.E.2d 728 (1972), for the premise that "[a] variance in the pleading and the proof with regard to the time of the commission of a crime does not constitute prejudicial error where time is not of the essence of the crime charged." Further, the circuit court found that W. Va. Code § 62–2–10 (1923) states, in pertinent part:

No indictment or other accusation shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed.

The circuit court further relied upon the case of *State ex rel. State v. Reed*, 204 W.Va. 520, 514 S.E.2d 171 (1999), for its finding that

the memory of young witnesses is not always clear in terms of date and times.

"[Y]oung children cannot be expected to be exact regarding times and dates[;] a child's uncertainty as to time and date upon which the offense charged was committed goes to the weight rather than to the admissibility of the evidence. Nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time for the offense where there is sufficient evidence that defendant committed each essential act of the offense."

*Reed*, 204 W.Va. at 523, 514 S.E.2d 171 at 174.

The circuit court concluded that the variance in the dates and counts charging the petitioner with offenses for which he was ultimately convicted was not prejudicial error because time was not of the essence. In terms of double jeopardy, the circuit court found that there were sufficient constitutional safeguards present to protect the petitioner from subsequent indictment on the same facts and incidents for which he was convicted.

■ Our review of the habeas proceeding leads us to conclude that there was no error in the circuit court's findings regarding the petitioner's claims. As noted by the circuit court, W. Va.Code § 62–2–10 provides that, "No indictment or other accusation shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" Time is not an element of the offenses with which the appellant was charged. *See Reed*, 204 W.Va. at 523, 514 S.E.2d at 174. Thus, there was no requirement that the indictment in this case specify precisely when the alleged offenses occurred. Moreover, this Court has explained that "[a] conviction under an indictment charged, though the proof was at variance regarding immaterial dates, precludes a subsequent indictment on the exact same material facts contained in the original indictment." *Id.*, at 524, 514 S.E.2d at 175. The circuit court's finding that the petitioner was not denied due process is fully supported by the evidence and is not clearly wrong. As

such, we affirm the circuit court's ruling on this ground.

## B.

### Expert Testimony of Dr. Wallace

The petitioner next asserts that most, if not all, of the trial testimony of Dr. Gregory Wallace should have been excluded pursuant to *Daubert v. Merrell Dow Pharmaceuticals.* Calling his opinions and tests "junk science," the petitioner also argues that the trial testimony of Dr. Wallace differed from his testimony in other cases before the Mercer County Circuit Court. The circuit court found that while *Daubert* was the controlling case regarding expert testimony, the testimony of Dr. Wallace was properly admitted.

■ This Court adopted the *Daubert* standard in *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995). When scientific evidence is offered for admission, we require the circuit court to engage in a gatekeeper role under *Daubert.* In order for the testimony to be admitted, the court must engage in a two-part analysis in regard to the testimony. First, the circuit court must determine whether the expert testimony reflects scientific knowledge, whether the findings are derived by scientific method, and whether the work product amounts to good science. Second, the circuit court must ensure that the scientific testimony is relevant to the task at hand. *See* Syl. pt. 4, *Gentry,* 195 W.Va. 512, 466 S.E.2d 171.

■ The petitioner argues that the scientific evidence of Dr. Wallace is clearly insufficient to meet the *Daubert* admissibility standard. We observe that all the petitioner's complaints about the admissibility of evidence from Dr. Wallace are based upon the discretionary decisions of the circuit court during the trial. However, a claim in a habeas corpus proceeding must have constitutional or jurisdictional underpinnings. Our habeas statute, W. Va.Code § 53–4A–1 states, in pertinent part,

Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence.

Under our law, state post-conviction relief is only available when (1) there is a denial or infringement upon a person's constitutional rights; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the legal maximum; or (4) the conviction would have been subject to collateral attack by statute or at common law prior to the adoption of W. Va.Code § 53–4A–1. *Pethel v. McBride,* 219 W.Va. 578, 589, 638 S.E.2d 727, 738 (2006). None of the petitioner's evidentiary claims related to Dr. Wallace falls within the latter three categories.

■ The evidentiary ruling about which the petitioner complains was entrusted to the trial court's sound discretion.[7] Even if

---

7. The circuit court's rulings about the admissibility of evidence are reviewed on direct appeal for abuse of discretion. *See* Syl. pt. 6, *Helmick v.*

*Potomac Edison Co.,* 185 W.Va. 269, 406 S.E.2d 700 (1991) ("The admissibility of testimony by an expert witness is a matter within the sound dis-

the trial court's decision were wrong, the claim is not recognizable in a habeas corpus proceeding because these rulings do not rise to a constitutional level.[8] "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979). We affirm the circuit court's ruling on this ground.

## C.

### Ineffective Assistance of Counsel

The petitioner finally argues that his counsel, Derek Lefler, was ineffective as a matter of law in a number of ways, including his failing to make a *Daubert* challenge to the testimony of Dr. Wallace, as discussed *supra*, his failure to use a rebuttal expert witness against Dr. Wallace, and his failure to produce and use a purportedly exculpatory letter from the DHHR. The petitioner argues that he was entitled by the U.S. and West Virginia Constitutions to effective representation.

The circuit court denied the ineffective assistance claim, finding that the decision to not bring in an expert witness to counter Dr. Wallace's opinion was not determinative of the outcome of the case. The circuit court found that counsel may not have wanted to expose weaknesses in the defense's case through the use of an expert. Further, the circuit court found that while petitioner's counsel did not object to Dr. Wallace's testimony about the bi-manual examination and the related statistics regarding a lax vaginal wall being indicative of sexual abuse, counsel did extensively cross-examine the witness about other aspects of his testing.

In terms of Mr. Lefler's cross-examination of Dr. Wallace, the circuit court found that counsel was able to get the doctor to concede that there were no scientific journals or other articles that substantiated his wall laxity test. The circuit court recognized that it was counsel's tactical decision to cross-examine the expert on the lack of evidence.

█ We have held that:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Our careful review of the entire record supports the circuit court's findings that petitioner's counsel acted within reasonable standards of conduct. The petitioner failed to prove that his trial counsel acted in a way that unfairly prejudiced him.

In regard to the supposed loss of the letter from the DHHR, the circuit court correctly found that the letter had no bearing on the petitioner's criminal case. Rather, it apparently reported on an investigation of the petitioner's home where domestic violence between the petitioner and his then-wife had been substantiated, but no further action was taken by the DHHR. The circuit court found that the letter itself did not reference an investigation for child sexual abuse. At most, the circuit court found that the letter could have been used as an impeachment device but not for the substance of or contents of the letter.

In terms of the loss of the letter, the circuit court found that the petitioner's current habeas counsel searched the DHHR's abuse and neglect files, medical records at the local hospital, medical records at another facility where the victim sought treatment, trial counsel's client file, the abuse and neglect file in the circuit clerk's office and prior appellate counsel's files, for evidence of such a lost letter. Nothing was found.

cretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong.").

8. Furthermore, petitioner had the opportunity to, and did, raise an issue related to Dr. Wallace's testimony in his direct petition seeking appeal of his conviction. This Court refused that petition in September 2004.

The circuit court carefully and fully reviewed the petitioner's claims of ineffective assistance and found them to be vague. Furthermore, the circuit court found that petitioner's counsel ably and vigorously defended the petitioner "by any standard of performance." In regard to assessing counsel's performance, we have held,

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 6, *Miller*, 194 W.Va. 3, 459 S.E.2d 114.

We see nothing in the record that would dispute the circuit court's findings about the performance of trial counsel. The circuit court was correct when it determined that the petitioner failed to prove his claims of ineffective assistance by a preponderance of the evidence, or that the outcome of petitioner's case would have been any different. We affirm the ruling of the circuit on the ineffective assistance ground.

## IV.

## CONCLUSION

For the foregoing reasons, we find no reversible error in the circuit court's February 9, 2011, order denying the petitioner's request for habeas corpus relief.

Affirmed.