# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Timothy O'Dell,**
**Petitioner Below, Petitioner**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0220** (Berkeley County 10-C-178)

**David Ballard, Warden, Mount Olive Correctional,**
**Complex, Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Timothy O'Dell, by counsel Ben J. Crawley-Woods, appeals the order of the Circuit Court of Berkeley County, entered January 30, 2013, denying his amended petition for a writ of habeas corpus. Respondent Warden David Ballard appears by counsel Christopher J. Quasebarth.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

Petitioner was convicted of the first-degree murder of Debbie Bivens and with conspiracy to commit murder following a jury trial in 2006.[1] He was sentenced to serve a term of life, with the possibility of parole, in the state penitentiary for the murder conviction, and five years for the conspiracy conviction, with the sentences running consecutively. Petitioner was resentenced for purposes of appeal in 2008, but his direct appeal was refused in 2009. He then filed his own petition for a writ of habeas corpus in 2010, and the court appointed counsel. The amended petition was denied by order entered on January 30, 2013. Petitioner appeals this order.

On appeal, petitioner asserts four assignments of error: (1) that a "presumed suicide note" implicating him was admitted during his criminal trial in violation of the United States and West Virginia Constitutions; (2) that the trial court failed to conduct a pretrial suppression hearing prior to admitting his videotaped statement; (3) that the habeas court improperly denied his

---

[1]The State's theory of the case was that Benny Brookman, a former paramour of Ms. Bivens, hired petitioner to kill her. Petitioner's defense was that Mr. Brookman hired petitioner to drive an unknown person to Ms. Bivens' house, but that petitioner did not know that the unknown person had been engaged to kill Ms. Bivens.

1

motion to conduct discovery on his claim that his statement was coerced; and (4) that trial counsel was ineffective. We have previously held:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review." Syl. pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Thompson v. Ballard*, 229 W.Va. 263, 728 S.E.2d 147 (2012).

## II.

We begin with petitioner's argument that his conviction was based in part on the Constitutionally-prohibited admission of a note that police officers found within days of the murder, in a locked truck near the hanged, shot, decomposing body of Benny Brookman, who police determined had committed suicide.[2] The note stated:

> yea I was going to pay Timmy Odell to kill Debbie for 50.00 Gave him $8.000 still owed him $42.000 he called me wed August 24, 2005 said Job was Done I was not Going to let anybody take $75.000 from me and that is what she Did. Give all my stuff to andy klesh Timmy Odell also vandalized Her cars 2 years ago for $2000 Give all my money + belongings to <u>andy klesh</u>. He is the best friend I ever Had. Any if you would burn me + put ashes in Bay. I know this is all crazy. I have always tryed to be a fair person But when you work hard and Save your money for you Goals in life, and the meet someone you thought you trust to take your money $75000 . I would have never Done this that Just Goes to show you what Greed does Sure I could have said oh well that is the way it Goes, but no I would never Done anybody that way. I worked hard for the money she took and could have build a bigger house. I have never been with a more Evil person in life. I sit here now and have bu for 3 ½ year to let it go. But it got the worst of me. Don't anybody fight over my stuff Just Give it to andy. Andy you take it spend it have fun. If I find out that you Did not do that I will whip you ass, andy you have been one best friend. I did not Really want to leave this way  But I no Down inside I could not Survive behind bars. It is very har to Do this but I not it is best. I have never been in Such a quiet place like this.  I was going to take boat Ride but no time, I Rush to find this spot because I Did not no if the cops were going to come to the house. Once I got her I relaxd to say good-bye to everyone. Even thought I left at 47, I still enjoyed life till this point, and I really have Done a lot of thing that I may never Done. I really had it all great family health, friends, how could I let it go. It is no fun socielizesyo threw bars. I Guess after this ordeal, what I have Done I probally will not Go to heven if one oh well I always like

---

[2]Prior to trial, defense counsel challenged the admissibility of the note on the ground that the authorship of the note was uncertain, but conceded that it was not testimonial evidence.

Raiseig alittill Bite of Hell. I am Getting [expletive]-up thought maybe would change mind. But I must move one. I can't Rememebor the last time I Enjoyed nature like thiss Just REmembor it is nothing that you all did. I was going to take Debbie out myself but, I figured It would be a taks so I new tim would take care of it, But he [expletive] up to. thanks <u>tim</u>. Believe me tim odell is just as much of falt as I am. His and my game plan Did not work so Don't feel sorry for the Dom-ass, and I don't wont you to feel sorry for me. I was a discussion I made that to me was good. Because there is a lot of thing you can passed me. But don't mess with my felling + money I worked hard for. I Love all of you + am sorry it all turned out this way But Just always Remembr the Good time we Spent together Love all of ya <u>Bye Bye  Just of Andy   you Bean Jop Bitch</u>. I will admit I [expletive]-up. I did make-up the game Plan. Tim is the on who [expletive] iit up, Look at it this way I will miss you all. My favortea Song was. <u>Elvis Suspesus mind</u> may wiser I love you and I wish thing could have move on.

(Errors and emphasis appears in original.)[3]

Petitioner's argument calls upon us to apply the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution. We recently explained:

> 'Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.' Syllabus Point 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

> Syl. Pt. 1, *State v. Jessica Jane M.*, 226 W. Va. 242, 700 S.E.2d 302 (2010). In this regard, it has been established that only hearsay statements fall within the prohibition of the *Crawford/Mechling* rule. See *State v. Waldron*, 228 W. Va. 577, 581, 723 S.E.2d 402, 406 (2012) (holding that "[i]t is important to emphasize again that, aside from the testimonial versus nontestimonial issue, a crucial aspect of *Crawford* is that it only covers hearsay, *i.e.*, out-of-court statements 'offered in evidence to prove the truth of the matter asserted.'" (quoting *United States v. Tolliver*, 454 F.3d 660, 665-66 (7th Cir. 2006), cert. denied, 549 U.S. 1149 (2007)).

*State v. Lambert*, --- W.Va. ---, ---S.E.2d ---, 2013 WL 5814136 (W.Va. October 25, 2013) (No. 12-1066).

---

[3]We include the text of the note as represented in the circuit court's order, inasmuch as the note does not appear to have been included in the appendix record.

In denying the amended petition for writ of habeas corpus, the circuit court first found that the note written by Mr. Brookman was not testimonial, because it "appeared to flow more from atonement and contrition than from an attempt to record past events or shift blame to others with the knowledge that the statements would later be used in court." *Final Order* at 18 *quoting U.S. v. Jordan*, 509 F.3d 191 (4th Cir. 2007). In so finding, the circuit court was mindful that we have held that a testimonial statement is one made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for later use at trial. Syl. Pt. 8, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006). The circuit court went on to find, "[a]s a secondary point," that Mr. Brookman's note was a dying declaration, and thus admissible.

Our threshold inquiry on this issue is whether the Mr. Brookman's note constituted hearsay evidence, requiring us to consider whether it was offered "to prove the truth of the matter asserted" as defined in Rule 801 of the Rules of Evidence. The briefing before us is sparse on this issue; however, it appears from testimony that police already had identified petitioner as a "person of interest" when the note was found. Furthermore, after the note was read by the investigating officer at trial, there was no discussion that would indicate that the discovery of the note impacted the investigation. We assume for the purposes of this discussion, then, that the note was indeed offered to prove that petitioner killed the victim. It is hearsay, and we must proceed to determine whether it is testimonial.

As noted above, "a testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Syl. Pt. 8, *Id.* at 368, 633 S.E.2d at 313. We elaborated:

> Under the Confrontation Clause contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution, a witness's statement taken by a law enforcement officer in the course of an interrogation is testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the witness's statement is to establish or prove past events potentially relevant to later criminal prosecution. A witness's statement taken by a law enforcement officer in the course of an interrogation is non-testimonial when made under circumstances objectively indicating that the primary purpose of the statement is to enable police assistance to meet an ongoing emergency.

Syl. Pt. 9, *Id.* at 368-69, 633 S.E.2d at 313-14.

We recently had the opportunity to expand our *Mechling* holding to reach a diary kept by a decedent wife, when that diary was proposed as evidence against her husband as he stood trial for her murder. *State v. Kaufman,* 227 W.Va. 537, 711 S.E.2d 607 (2011). However, we declined to find the contents of the diary testimonial, explaining:
> First, the statements in the diary were clearly not made to a law enforcement
> officer in the course of an interrogation. Furthermore, the circumstances

4

surrounding the making of the statements do not objectively indicate that there is no ongoing emergency, and that the primary purpose of the victim's diary was to establish or prove past events potentially relevant to later criminal prosecution. [*Mechling*], at syl. pt. 9. Appellant's arguments notwithstanding, this Court is not persuaded that the victim's diary was made under circumstances which would have led her reasonably to believe that the diary would be available for use at a later trial date. *Mechling*, at syl. pt. 8. Therefore, we conclude that the victim's diary was nontestimonial for purposes of Confrontation Clause analysis and that, accordingly, the trial court committed no error on this issue.

*Id*. at 551, 711 S.E.2d at 621.

Petitioner argues that the circuit court's view that the note is non-testimonial is not supported by the evidence, and that when writing his note, Mr. Brookman knew that he would be found by law enforcement officers—as stated in the note itself—but purposely implicated petitioner with statements that were "accusatory and testimonial in nature." Even so, we find the circumstances before us analogous to those in *Kaufman*, and agree with the circuit court. Mr. Brookman did not make his statement to law enforcement officials but instead left, as he prepared to take his own life—circumstances we cannot objectively characterize as non-emergency—a note with sentiments directed toward multiple people. While Mr. Brookman expressed disdain for petitioner, the bulk of the note is characterized by remorse and explanation for his choice of suicide, as well as his affection and intended testamentary bequest for a friend. The author's primary purpose in writing the note was to bring closure to a number of events in his life, and not "to establish or prove past events potentially relevant to later criminal prosecution." Having thus determined that Mr. Brookman's note is non-testimonial, we find no affront to *Crawford/Mechling*.[4]

## III.

We consider petitioner's second and third assignments of error together, because he argues in one that his statement to police was coerced and, in the second, that he was entitled to

---

[4]Petitioner does not argue that the note was improperly excluded from hearsay as a "dying declaration" pursuant to Rule 804(b)(2) of our Rules of Evidence. In fact, it appears that no hearsay objection was made at trial and counsel instead objected to the note as unreliable, arguing that the authorship was uncertain. We note that had a hearsay objection been preserved, we nevertheless would find the evidence properly admitted because Mr. Brookman believed his death was imminent. We have held that

[a] suicide note may be admissible pursuant to W.Va. R. Evid. 804(b)(2) as a dying declaration exception to the hearsay rule. In order for a statement found in a suicide note to be admissible as a dying declaration the following must occur: the statement must have been made when the declarant was under the belief that his death was imminent, and the dying declaration must concern the cause or circumstances of what the declarant believes to be his impending death.

*State v. Satterfield*, 193 W.Va. 503, 506-07, 457 S.E.2d 440, 443-44 (1995).

5

conduct discovery on that issue.[5] There is no dispute that petitioner was appropriately advised of his rights and that he voluntarily accompanied officers to the police station. The circuit court noted that, prior to giving his statement, petitioner was free to leave the police station. Nonetheless, petitioner "contend[s] that there was psychological coercion within his more than two-hour interrogation by police officers, which resulted in him making involuntary, coerced, and unreliable statements." He further argues that "[s]uch psychological coercion would not have been evident from a cursory review of a cold transcript" and that the circuit court committed error by not watching the videotape of petitioner's statement.

The record on appeal is entirely devoid of any indication that petitioner's interrogation was improper or that a scintilla of evidence was presented to the trial court to command the watching of the video. In fact, petitioner has not permitted this Court to engage in even the "cursory review of a cold transcript" that the circuit court was allowed, because the appendix record contains only three, non-sequential pages of the transcript of the subject police interview. From those three pages, we discern no maltreatment of petitioner. We further note the absence of even an affidavit that would suggest that petitioner was so much as denied a drink of water, or subjected to abnormally high or low room temperature, or that his interrogation was uncomfortable in the least. He has informed us only that the police interview lasted approximately two hours, a reasonable length of time on its face. Petitioner has offered no support for the ground that his statement was coerced.[6]

For this reason, we also find no merit in petitioner's argument that the circuit court erred in denying his motion to conduct discovery on this asserted ground for habeas relief.[7]

_____

[5]Though petitioner's phrasing suggested that the trial court failed to conduct a suppression hearing, it appears no pretrial motion to suppress was filed and no objection to the admission of the statement was made at trial. Moreover, excerpts from the pre-trial hearing transcript provided in the appendix record suggest that the State offered the testimony of at least one investigating officer, whom defense counsel then had an opportunity to cross-examine, after defense counsel stated, "I don't think my client's will was ever overborn" and "[Emotional or psychological cajoling] is the only way I could challenge [this statement]."

[6]Petitioner argues that two jury questions at trial evidence the jury's belief that petitioner was subjected to coercion. Because the trial court gave a standard instruction regarding the State's obligation to prove by a preponderance of the evidence that petitioner's statement was voluntarily made, and because that instruction utilized the phrase, "without threat, coercion, promise or reward," we find this argument unpersuasive. Furthermore, if there was a basis in the trial transcript for the jury's having asked these questions, petitioner has not brought that basis to our attention. We again find ourselves reminding a litigant that Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that briefs before this Court contain an argument demonstrating clearly the points of fact and law presented. That rule also requires that such argument "contain appropriate and specific citations to the record on appeal. . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal."

[7]Rule 7 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia provides:

We have explained . . . that "unlike an ordinary civil litigant, a habeas petitioner 'is not entitled to discovery as a matter of ordinary course.'" *State ex rel. Parsons v. Zakaib*, 207 W.Va. 385, 390, 532 S.E.2d 654, 659 (2000) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97, 103 (1997)). Pursuant to Rule 7(a) of the Rules Governing Post-Conviction Habeas Corpus Proceedings: "[i]n post-conviction habeas corpus proceedings, a prisoner may invoke the processes of discovery available under the West Virginia Rules of Civil Procedure *if, and to the extent that, the court in the exercise of its discretion, and for good cause shown, grants leave to do so*." (Emphasis added). Interpreting this rule, we have held that

> [i]n proceedings under the West Virginia Post-Conviction Habeas Corpus Act, W.Va. Code §§ 53-4A-1 to -11, discovery is available *only* where a court in the exercise of its discretion determines that such process would assist in resolving a factual dispute that, if resolved in the petitioner's favor, would entitle him or her to relief.

Syl. pt. 3, *State ex rel. Parsons v. Zakaib*, 207 W.Va. 385, 532 S.E.2d 654 (emphasis added).

*State ex rel. Wyant v. Brotherton*, 214 W.Va. 434, 438-39, 589 S.E.2d 812, 816-17 (2003).

Here, there simply was no good cause shown that would lead us to believe that the circuit court abused its discretion in denying petitioner's motion to conduct discovery.[8]

---

Rule 7. Discovery.

(a) *Leave of court required.*—In post-conviction habeas corpus proceedings, a prisoner may invoke the processes of discovery available under the West Virginia Rules of Civil Procedure if, and to the extent that, the court in the exercise of its discretion, and for good cause shown, grants leave to do so. If necessary for effective utilization of discovery procedures, counsel shall be appointed by the court for a petitioner who qualifies for the appointment of counsel under Rule 3(a).
(b) *Requests for discovery.*—Requests for discovery shall be accompanied by a statement of the interrogatories or requests for admission and a list of the documents, if any, sought to be produced.
(c) *Expenses.*—If the respondent is granted leave to take the deposition of the petitioner or any other person, the court may, as a condition of taking the deposition, direct the respondent to pay the expenses of travel, subsistence and fees of counsel for the petitioner to attend the taking of the deposition.

[8]The appendix record does not appear to contain the motion that petitioner filed with the circuit court. A footnote in his amended petition states:

IV.

Finally, we consider petitioner's claim that he was burdened by ineffective assistance of trial counsel. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus Point 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Petitioner's argument on this subject is based entirely on two statements made by his trial counsel.[9] First, during counsel's cross-examination of a police officer, counsel said, "Don't do what [petitioner] did and not tell all the truth." The second statement, made in closing argument to the jury, was, "Somebody else shot her if you believe that incredible story." With respect to this issue, the circuit court concluded:

> [T]hese recitations are taken out of context by [p]etitioner. The first was during a rigorous cross-examination of Officer Hall, one of the investigating officers, where [t]rial [c]ounsel had continually questioned him regarding his admitted untruthfulness. Here it appears [t]rial [c]ounsel was trying to remind the jury that the investigating officer had been lying and was now beginning to tell the full truth in order to make the fact that the [p]etitioner's reluctance to tell the full truth during an investigation not appear so bad. This remark could be taken as not "prejudicial" to [p]etitioner at all. In any case, this is clearly a decision

---

[Petitioner] is filing a motion for leave to conduct discovery and a motion for expenditure of expert fees in conjunction with this petition for the purposes of retaining an expert on the dynamics of coerced confessions (e.g.[,] social psychology of interrogation tactics, the circumstances surrounding false or coerced confessions, interrogation tactics and there (*sic*) affects (*sic*)—i.e.[,] false, characteristics of defendants that may make them unusually susceptible to a coercive interrogation, etc.), who may be able to inform the [c]ourt with respect to the issues of voluntariness within [petitioner's] statement and the questions raised by the jury after they found coercion was present.

Inasmuch as we do not have petitioner's motion before us, it is not clear on what basis petitioner grounded that motion; however, based on this footnote, we see little more than a request for an expensive fishing expedition.

[9]On appeal, petitioner appears to have abandoned his arguments, presented below, that trial counsel was ineffective for failing to seek the exclusion of Mr. Brookman's note and for failing to engage an expert witness to address possible coercion. For the reasons set forth in the body of this decision, we would not find support in either of those accusations for petitioner's ineffective assistance of counsel claim.

"involving strategy, tactics and arguable courses of action." [Syl. Pt. 21, *State v.*] *Thomas*, 157 W.Va. 640, [203 S.E.2d 445 (1974)]. The second statement is too taken out of context. Trial [c]ounsel's closing argument is well-made and quite persuasive in light of the evidence. It appears that the tone and meaning of certain statements[,] especially those in closing arguments is difficult to glean from a cold transcript. This statement appears quite possibly to be made in a sarcastic manner, made to insinuate that it was actually a possible story—especially when considering it in context with the entire closing argument. Whatever the strategy in stating this during an otherwise well-made argument, it remains a decision "involving strategy, tactics and arguable courses of action." [*Id.*] Therefore, the contention is insufficient to satisfy the first prong of the *Miller* and *Strickland* analysis.

Petitioner offers no conflicting interpretation of the subject trial counsel statements, but only suggests that an evidentiary hearing was necessary to divine the meaning. However, "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing . . . if the petition, exhibits, affidavits or other documentary evidence filed therewith show to [the circuit] court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

We disagree with petitioner's argument that the circuit court needed to conduct an evidentiary hearing to address this claim. Like the circuit court, upon review of the context of trial counsel's statements, we find the statements to be objectively reasonable. Moreover, in light of the admission of the note written by Mr. Brookman, together with the statement of petitioner, we cannot say that there is a reasonable probability that the outcome of the proceedings would have been different had the statements not been made.[10]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING**

Justice Robin Jean Davis
Justice Menis E. Ketchum

---

[10]As stated above, we have not been provided a full transcript or copy of the videotape of petitioner's statement. We accept petitioner's characterization, acknowledged in the circuit court's final order, that the statement was inculpatory.